RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 4/1/11

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| TRAVIS BOYD, ET AL. | CIVIL ACTION NO. 09-0021 |
| VERSUS | JUDGE ROBERT G. JAMES |
| KRAIG S. DILL, ET AL. | MAG. JUDGE KAREN L. HAYES |

RULING

Pending before the Court is a Motion for Default Judgment [Doc. No. 37] filed by Plaintiff Sharon-Lyn Brumfield ("Brumfield") against Defendant Kraig S. Dill ("Dill"). The Motion is unopposed.

For the following reasons, the Motion is GRANTED. A default judgment is entered against Dill and in favor of Brumfield.

I. FACTUAL AND PROCEDURAL HISTORY

Dill was a guard employed by the City of Faith, a community correctional center or halfway house in Monroe, Louisiana. Pursuant to a contract with the State of Louisiana, the City of Faith houses persons who have been sentenced to a term of imprisonment in the state correctional system for the final portion of their sentences. On or about January 10, 2008, Travis Boyd ("Boyd"), the original Plaintiff in this matter, was housed at the City of Faith.

On that date, Dill, in the context of his employment with the City of Faith, picked up Boyd, ostensibly to transfer him to Boyd's place of employment, Daily Harvest, a local bakery. However, Dill instead took Boyd to Dill's residence where he threatened to charge Boyd with rules infractions, which would have resulted in Boyd's return to prison, unless Boyd acquiesced to his sexual advances. Dill then forced Boyd to have sexual intercourse. Dill also committed oral sexual battery

on Boyd.

When he returned to the City of Faith, Boyd called the Monroe Police Department to report his rape. When officers with the Monroe Police Department arrived at the City of Faith, they were informed by Director Ollie O'Neal ("O'Neal") that the investigation would be handled "in house." However, the officers persisted and spoke to Boyd.

Officers later spoke with Dill, who admitted that a fellow employee, Kenny Gibson, and O'Neal came to his house shortly before officers arrived at City of Faith to tell him about Boyd's accusations. Dill was then taken to the Monroe Police Department and questioned by an investigator, Tracy Heath ("Heath"). After having been advised of his Miranda rights and in response to Heath's questioning, Dill admitted to having sexual intercourse and oral sex with Boyd.

Boyd provided a condom used during sexual intercourse, and he submitted to a rape examination at St. Francis Hospital. Dill also allowed employees at St. Francis Hospital to examine him.

On February 13, 2008, the District Attorney for the Fourth Judicial District of Ouachita Parish filed a Bill of Information charging Dill with five counts of malfeasance in office on or about January 3 and 10, 2008.

In August 2008, Boyd was paroled, and he returned to live in the New Orleans area.

On January 8, 2009, Boyd filed suit under 42 U.S.C. § 1983 and § 1988, alleging that he was subjected to civil rights violations by Defendants City of Faith, General Star Indemnity Co., O'Neal, Dill, and City of Faith's Executive Director, Ricky Banks ("Banks"). Boyd also brought suit under Louisiana law for sexual battery and negligence. Boyd sought damages for physical and mental pain and suffering and humiliation, as well as punitive damages under § 1983 and attorney's fees and

costs under § 1988.

On January 9, 2009, a summons issued for each of Defendants.

On February 3, 2009, Boyd was examined by a psychologist, Dr. Beverly A. Howze, for 2 and one-half hours. Dr. Howze described Boyd, who was twenty-five years old at the time, as "small in stature" and appearing "young and naive." [Doc. No. 37, Exh. 1, p. 1]. In her opinion, Boyd appeared "clinically depressed" and was "very embarrassed" about his rape. *Id.* at p. 2. When he described the impact on his life, Boyd recounted that he suffered embarrassment about the rape because his uncle told his family, and he had been teased. He also stated that he had "flashbacks" to the rape when he was intimate with his girlfriend, causing him to experience "erectile dysfunction" and, at times, "'no feelings' whatsoever." *Id.* He stated that the "intrusive thoughts" were "constant, and "sexual activity [was] . . . a waste of time." *Id.*

As part of his social history, Boyd recounted that, as a child, he was physically abused by his father, that he would run away, and that he became suicidal, attempting suicide at least once. He was hospitalized several times from the age of 11.

Ultimately, Dr. Howze diagnosed Boyd as suffering from posttraumatic stress disorder ("PTSD") and depression, which she attributed to the "triggering device" of the rape. [Doc. No. 37, Exh. 1, p. 4]. She viewed him as "believable." *Id.*

On February 13, 2009, Boyd returned to Dr. Howze's office in a "suicide crisis." [Doc. No. 37, Exh. 1, p. 23]. Although Dr. Howze was not in her office, she counseled Boyd by telephone. Although Boyd was "crying and highly agitated," she was able to obtain his agreement to reside with his aunt temporarily. *Id.* Dr. Howze's office arranged for a cab to take him to his aunt's home. Dr. Howze had no further contact with Boyd after this date.

Shortly after Dr. Howze's examination, Boyd was tragically murdered in New Orleans.[1]

On June 3, 2009, an Order to Show Cause [Doc. No. 7] issued from the Court, requiring the parties to show cause why they had not complied with the Case Management Order in this case. In response, counsel for all Defendants except Dill notified the Court that Boyd had died and also filed a motion for extension of time to file the case management report. [Doc. Nos. 8 & 9]. The Magistrate Judge granted the extension of time, but required the parties to file a suggestion of death. [Doc. No. 10]. Defendants, except for Dill, filed a Suggestion of Death on June 4, 2009. [Doc. No. 11].

On August 28, 2009, counsel for Boyd filed a "Motion to Substitute Parties [sic] Plaintiff" [Doc. No. 13], requesting that the Court allow Brumfield, the mother and natural tutrix of Boyd's only surviving child, to substitute as Plaintiff in this action. The motion was granted. [Doc. No. 15].

However, on September 25, 2009, the Clerk of Court issued a Notice of Intent to Dismiss for Failure to Effect Service on Dill.[2] [Doc. No. 16].

On October 5, 2009, Brumfield filed a Motion for Extension of Time to Serve Dill [Doc. No. 19]. The motion was granted, and Brumfield had until November 4, 2009, to serve Dill. [Doc. No. 20]. On October 9, 2009, the summons was returned executed. [Doc. No. 21]. Dill was personally served on October 8, 2009, at the Jackson Parish Correctional Center by the Assistant

---

[1] Boyd was shot and killed on a street corner in New Orleans on March 9, 2009. See http://www.nola.com/news/t-p/metro/index.ssf?/base/news-33/1236748851271520.xml&coll=1; see also [Doc. No. 37, p. 2 ("Travis Boyd passed way in March of 2009.")].

[2] The Notice also issued as to "XYZ Insurance Company," but, by that time, the proper insurer had been substituted as a Defendant. Accordingly, XYZ Insurance Company was dismissed on January 21, 2010 [Doc. No. 22].

Warden. His answer was due on October 28, 2009, but Dill filed no response.

On February 3, 2010, the Clerk of Court issued a Notice of Intent to Dismiss because Brumfield had failed to prosecute by seeking default against Dill. [Doc. No. 23].

On February 16, 2010, Brumfield requested entry of default against Dill, and the default was entered by the Clerk of Court. [Doc. Nos. 24 & 25].

On February 18, 2011, more than one year later, Brumfield filed the instant Motion for Default Judgment. At no time has Dill filed any pleadings or otherwise appeared in this action.

## II. LAW AND ANALYSIS

### A. Default Judgment

An entry of default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." FED. R. CIV. P. 55(a).

After 14 days have elapsed since the Clerk's entry of default, a plaintiff may move for default judgment under Rule 55(b). If the plaintiff's claim is for a "sum certain or a sum that can be made certain by computation," then the Clerk of Court, on the plaintiff's request with a supporting affidavit, must enter judgment for that amount and costs against a defendant who has been defaulted. FED. R. CIV. P. 55(b)(1). However, when the plaintiff's claim does not involve a sum certain, the plaintiff must "apply to the court for a default judgment." FED. R. CIV. P. 55(b)(2). The court "may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to . . . (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." FED. R. CIV. P. 55(b)(2). Nevertheless, Rule 55(b)(2) "gives the judge wide latitude in

determining whether such a hearing will be beneficial." *James v. Frame (In re Frame)*, 6 F.3d 307, 311 (5th Cir. 1993).

While a plaintiff is not entitled to a default judgment as a matter of right, the Court accepts the well-pleaded allegations of fact in the plaintiff's complaint in determining whether default judgment should be entered. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (A "defendant, by his default, admits the plaintiff's well pleaded allegations of fact."). The Court also considers certain factors: (1) whether material facts are at issue, (2) whether there has been substantial prejudice, (3) whether the grounds for default are clearly established, (4) whether the default was caused by a good faith mistake or excusable neglect, (5) the harshness of a default judgment, and (6) whether the Court would think itself obliged to set aside the default on the defendant's motion. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

In this case, the Court finds, first, that it has subject matter jurisdiction over Brumfield's § 1983 claims and supplemental jurisdiction over her state law claims. Next, applying the Fifth Circuit factors, the Court finds that default judgment against Dill is warranted. Dill's default is clearly established in this case. The Complaint was personally served on Dill on October 8, 2009, but he has failed to file an answer or otherwise respond since that time, one and one-half years ago. *See* FED. R. CIV. P. 55(a). There are no facts or evidence to indicate that Dill's failure to respond is based on a good faith mistake or excusable neglect. Additionally, Brumfield waited more than a year from the entry of default before moving this Court for a default judgment.[3] Brumfield has and would continue to suffer prejudice if the Court permitted Dill further time to file an answer when he has

---

[3] During this time, Brumfield settled her claims against all other Defendants, and a joint stipulation of dismissal was filed on February 19, 2011. [Doc. No. 39].

shown no indication that he intends to defend this lawsuit. Finally, reviewing the well-pleaded allegations in the Complaint, as well as the other admissible evidence, the Court finds that Brumfield has shown that Dill committed civil rights violations against Boyd while acting in his capacity as an employee of the City of Faith, a state actor, and subjected Boyd to battery as defined by state law.[4] *See Copeland v. Nunan*, 250 F.3d 743, 2001 WL 274738, at *2 (5th Cir. 2001) ("[S]exual assaults against inmates by prison guards without lasting physical injury may be actionable under the Eighth Amendment [through § 1983] as acts which are 'offensive to human dignity.'") (quoting *Schwenk v. Hartford*, 204 F.3d 1187, 1196-97 (9th Cir. 2000))[5]; *Caudle v. Betts*, 512 So.2d 389 (La. 1987) (A civil battery occurs when one intends to inflict, and does inflict, either a harmful or offensive contact.). Thus, there are no material facts in dispute.

The Court must now turn to an evaluation of damages. Brumfield moves the Court for an award of general damages in the amount of $150,000.00.[6]

In support of her motion, Brumfield relies on the affidavit and report of Dr. Howze, Boyd's examining psychologist. Dr. Howze found Boyd to be suffering from PTSD and depression and described Dill's rape as the "triggering device" for Boyd's conditions. Boyd suffered from

---

[4]In fact, it appears from the record that Dill entered a guilty plea to the crimes of malfeasance based on his actions against Boyd.

[5]Dill's threats of false disciplinary actions may also have violated the Fourth and Fourteenth Amendments. However, having determined that Dill's actions, based on the undisputed facts, constitute a violation of the Eighth Amendment, the Court need not address the remaining claims.

[6]In his Complaint, Boyd also sought punitive damages under § 1983 and attorney's fees and costs under § 1988. However, in her motion, Brumfield seeks only compensatory general damages.

significant embarrassment, erectile dysfunction and lack of feeling, and suicidal thoughts[7] and feelings more than one year after his rape. Given Dr. Howze's testimony and the other facts provided in this case, the Court finds that an award of $150,000.00 in general damages for physical and emotional pain and suffering, emotional distress, and humiliation is appropriate under § 1983 and state law. See *Veazey v. Elmwood Plantation Ass'ns*, 93-2818 (La. 11/30/94), 650 So.2d 712 ($150,000.00 award of general damages for woman raped by intruder); *Louiviere v. Louviere*, 2001-0089 (La. App. 1 Cir. 6/5/02), 839 So.2d 57 ($255,000.00 award of damages for physical pain and suffering $637,500.00 award of damages for mental pain and suffering, embarrassment, and humiliation for woman raped by deputy sheriff); *Doe v. Doe*, 95-0006 (La. App. 1 Cir. 10/6/95), 671 So.2d 466 (Although the case was later reversed on the basis of prescription, trial judge granted judgment as a matter of law, rendering a damage award in the amount of $300,000.00 for the rape of seventeen-year-old male patient by his male dentist); *Samuels v. S. Baptist Hosp.*, 594 So.2d 571 (La. App. 4 Cir. 1992) ($376,000.00 award of damages for rape of sixteen-year-old patient at a psychiatric unit by nursing assistant where patient suffered no physical trauma, but was diagnosed with PTSD).

### III. CONCLUSION

For the foregoing reasons, Brumfield's Motion for Default Judgment [Doc. No. 37] is GRANTED, and a default judgment is entered against Dill on Brumfield's claims under § 1983 and under Louisiana law for battery. Brumfield, as natural tutrix of the minor child of Boyd, is awarded

---

[7]Boyd was candid that he suffered from mental illness since childhood, including at least one previous suicide attempt. However, given Dr. Howze's testimony that the rape was the triggering device for his depression and PTSD, the Court finds it appropriate to consider Boyd's suicidal thoughts and feelings in determining an appropriate award of damages.

$150,000.00 in general damages for physical and mental pain and suffering, emotional distress, and humiliation.

MONROE, LOUISIANA, this __31__ day of __March__, 2011.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE